**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MIDVALE PAPER BOX COMPANY, INC.,** : | |
| : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:20-0022** |
| : | |
| **v** : | **(JUDGE MANNION)** |
| : | |
| **CINTAS CORPORATION d/b/a CINTAS FIRE PROTECTION,** : | |
| : | |
| **Defendant/Third Party Plaintiff** : | |
| : | |
| **and** : | |
| : | |
| **CUSTOM SEATS, INC. d/b/a BACKSPIN SEATING,** : | |
| : | |
| **Third Party Defendant** : | |

## <u>MEMORANDUM</u>

Before the court is defendant and third-party plaintiff Cintas Corporation d/b/a Cintas Fire Protection's ("Cintas") motion for summary judgment, (Doc. 64), and third-party defendant Custom Seats, d/b/a Backspin Seating's ("Custom Seats") cross-motion for summary judgment, (Doc. 66). For the following reasons, Cintas' motion for summary judgment, (Doc. 64), is **DENIED** and Custom Seats' cross-motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, (Doc. 66).

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a fire protection agreement made between Cintas and Custom Seats. (Doc. 74 at ¶11). During the period relevant to this action, Custom Seats owned commercial real estate located at 1212 Scott Street, Wilkes-Barre, Pennsylvania 18705 (the "Property") and leased warehouse space within the Property to Midvale Paper Box Company, Inc. ("Midvale"). *Id*. at ¶¶4, 6.

In December 2015, Cintas began providing Custom Seats fire protection services at the Property. *Id*. at ¶7. In the several years which followed, Cintas provided fire protection goods and services to Custom Seats for which Cintas issued invoices and Custom Seats made payment. *Id*. at ¶¶8, 10.

On December 14, 2018, Cintas and Custom Seats entered into a fire protection agreement (the "Agreement") wherein Cintas agreed to "replace the damaged sprinkler system piping from underground to line piping caused by water company flushing the exterior system with too much pressure." *Id*. at ¶11.   On behalf of Custom seats, Custom Seats' owner Thomas Dellamalva ("Dellamalva"), executed the Agreement. (Doc. 66-1 at ¶34).

Pursuant to the Agreement, Cintas performed repair work on the Property on May 23, 2019. (Doc. 66-1 at ¶¶26-27). Later the same day, after

Cintas completed its repair work, water began flowing from the sprinkler system's pipes to the Property's warehouse space and ultimately flooded the space. *Id*. at ¶¶26-28.

On January 6, 2020, Midvale initiated the above-captioned action against Cintas, (Doc. 1), and on May 23, 2019, filed an amended complaint which comprised of a negligence claim against Cintas. (Doc. 64-3). In its amended complaint, Midvale alleged that Cintas "owed a duty to use reasonable care and skill in repairing the sprinkler system piping" at the Property and "breached its duty by failing to act as a reasonable and competent contractor in negligently, recklessly and/or carelessly failing to properly repair the subject piping system […]" (Doc. 11 at ¶¶21-26). Midvale asserted that Cintas' negligence in repairing the sprinkler system resulted in the Property's warehouse space becoming flooded on May 23, 2019 and, consequently, damaging Midvale's inventory and equipment. *Id*.

When Midvale commenced the above-captioned action against Cintas on January 6, 2020, Cintas sent Custom Seats a tender letter, requesting that Custom Seats defend and indemnify Cintas pursuant to the Agreement's terms. (Doc. 66-1 at ¶6). Cintas avers that Custom Seats has not responded to the tender letter. *Id*. at ¶7.

On March 16, 2020, Cintas filed a third-party complaint against Custom Seats asserting that, pursuant to the Agreement, Custom Seats was obligated to insure, defend, and indemnity Cintas from Midvale's claims arising from the May 2019 flooding incident. (Doc. 19 at ¶25). On May 29, 2020, Custom Seats submitted an answer to the third-party complaint denying the existence of such obligations and asserting cross-claims against Cintas. (Doc. 23).

Subsequently, the original suit between Midvale and Cintas settled. By an order dated March 24, 2021, this court dismissed with prejudice Midvale's claims against Cintas. (Doc. 63). Under the settlement terms, Cintas agreed to pay $412,500 to Midvale in order to dismiss Midvale's claims against it. (Doc. 64-8 at ¶23). Thus, the claims remaining in the above-captioned action are between Cintas and Custom Seats.

On May 7, 2021, Cintas filed a motion for summary judgment and supporting brief. (Docs. 64, 65). On May 28, 2021, Custom Seats filed a brief containing an opposition to Cintas's motion for summary judgment as well as a cross-motion for summary judgment on Cintas' claims as asserted in its third-party complaint. (Doc. 66). Cintas on July 12, 2021 filed a brief in opposition to Custom Seat's cross-motion for summary judgment. (Doc. 70).

The court, by a memorandum order dated April 14, 2022, dismissed Cintas's third-party complaint without prejudice for failure to adequately allege subject matter jurisdiction. (Docs. 72, 73). On April 20, 2022, Cintas filed an amended third-party complaint, asserting against Custom Seats claims of breach of contract (Count I), contractual indemnification (Count II), and declaratory judgment (Count III). (Doc. 74).[1]

On May 23, 2022, Cintas and Custom Seats submitted a stipulation wherein the parties agreed that all allegations contained in Cintas' amended third-party complaint are deemed denied by Custom Seats and, thus Custom Seats would not be required to re-file its answer. (Doc. 75). The parties further agreed that their previously filed motions for summary judgment, including any supporting documents, are deemed revived as pending motions to be decided by the court. The court approved the parties' stipulations by an order dated May 27, 2022. (Doc. 78).

As such, Cintas' motion for summary judgment, (Doc. 64) and Custom Seats' cross-motion for summary judgment, (Doc. 66), are ripe for the court's review.

---

[1] The causes of action contained in the amended third-party complaint remain unchanged from Cintas's original third-party complaint. (Doc. 74 at 2).

## II.    SUBJECT MATTER JURISDICTION

Presently, as the suit between original litigants Midvale and Cintas has been settled and dismissed with prejudice, the court must determine whether it has an independent basis for federal jurisdiction over the remaining third-party action. *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217 (3d Cir. 1999) ("A federal court has the obligation to address a question of subject matter jurisdiction *sua sponte*.") (citation omitted).

Cintas' amended third-party complaint asserts that this court has subject matter jurisdiction on the basis of diversity jurisdiction. Federal district courts have diversity jurisdiction over cases where there exists complete diversity between citizens of different states and where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. §1332(a). Because Cintas seeks "damages in excess of $75,000 exclusive of interest and costs," the amount in controversy threshold is satisfied. (Doc. 74 at ¶34).

The court is also satisfied that there exists complete diversity in citizenship between the third-party litigants. A corporation is considered a citizen of both the state "by which it has been incorporated" and the state "where it has its principal place of business." 28 U.S.C. §1332(c)(1). Cintas alleges that Custom Seats is "a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of

business at 49 O'Neill Drive, Moosic, Pennsylvania 18507." (Doc. 74 at ¶2). As to its own state of citizenship, Cintas alleges that it is "a corporation organized and existing under the laws of the State of Washington with its principal place of business at 6800 Cintas Boulevard, Mason, Ohio 45050." *Id*. at ¶1.

Because the court has diversity jurisdiction over the case, we now turn to Cintas and Custom Seats' respective motions for summary judgment.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F.Supp. 836, 838 (M.D.Pa. 1995). At the summary judgment stage, "the judge's

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249*; see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of

an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV.    DISCUSSION

### a.  **Breach of Contract (Count I)**

In moving for summary judgment, Cintas contends that Custom Seats breached the Agreement by failing to name Cintas as an additional insured on its insurance policies for the Property and by failing to indemnify Cintas from the costs and expenses associated with the defense of Midvale's negligence claim against Cintas, which settled for $412,500 in Midvale's favor. In its cross-motion for summary judgment, Custom Seats maintains that the Agreement does not require Custom Seats to indemnify Cintas' own negligence.

As a threshold matter, the court must determine the law applicable to the instant breach of contract claim. A federal court sitting in diversity, like here, applies the substantive law, including conflict of law rules, of the state in which it sits.

F.2d 1177, 1179 (3d Cir. 1972) (*citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). As this court sits in Pennsylvania, we apply Pennsylvania conflict of law rules. Under Pennsylvania law, if the parties have agreed to the applicable law, "[c]hoice of law provisions in contracts will generally be given effect." *Smith v. Commonwealth Nat'l Bank,* 384 Pa.Super. 65, 557 A.2d 775, 777 (Pa.Super.Ct. 1989); *see, e.g. Nationwide Mut. Ins. Co. v. West,* 807 A.2d 916, 920 (Pa.Super.Ct. 2002) (finding Ohio law applied where the contract at issue specified Ohio law).

Here, Section 14 of the Agreement provides that "the rights and obligations of the parties contained herein shall be governed by the laws of the state of Ohio, excluding any choice of law rules which may direct the application of the laws of another jurisdiction." (Doc. 64-8 at 4). Because the Agreement provides for the application of Ohio law and, in the absence of Pennsylvania choice of law rules which directs the application of another jurisdiction's laws, the court will apply Ohio law in the instant breach of contract analysis.[2]

Under Ohio law, the elements of a breach of contract claim are "1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the

---

[2] The parties, moreover, do not dispute that Ohio law governs the Agreement.

defendant; and 4) damage or loss to the plaintiff." *Liberty Insurance Corp. v. Anderson*, No. 1:16CV2249, 2017 WL 2962333 (N.D. Ohio July 12, 2017) (citing *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F.Supp.2d 763, 769 (N.D. Ohio 2004)).

Cintas argues that the Agreement requires Custom Seats to insure, indemnify and hold Cintas harmless from all damages associated with the defense of Midvale's claims against Cintas. It maintains that Custom Seats breached its contractual obligations by failing to name Cintas as an additional insured on its insurance policies for the Property and failing to indemnify Cintas and hold it harmless from damages associated with the defense of Midvale's claims.

### i. **Existence of a Valid Contract**

The parties do not dispute that the Agreement is a valid contract. Rather, they dispute whether the Agreement requires Custom Seats to indemnify Cintas for its own negligent performance. Cintas argues that the Agreement unambiguously requires Custom Seats to indemnify Cintas for its own negligence, specifically the costs it had incurred in defending against Midvale's negligence suit.

However, Custom Seats contends that the Agreement's indemnification provision is ambiguous, and the scope of such

- 11 -

indemnification provision does not cover Cintas' own negligence but rather only covers the function of Cintas' system as designed. Custom Seats maintains that because ambiguous indemnification provisions must be construed against the drafter, the Agreement should be construed against Cintas and summary judgment should be awarded in Custom Seats' favor.

The court first addresses the issue of whether the Agreement's language is sufficient to relieve Cintas from liability arising from its own negligence.[3] In the absence of an applicable public policy exception, Ohio law generally permits the enforcement of indemnity agreements.[4] *Worth,* 32 *Ohio St.3d at 241, 513 N.E.2d at 257; Glaspell v. Ohio Edison Co.,* 29 Ohio *St.3d 44, 46 (1987).* However, "under Ohio law provisions that purport to limit negligence liability are strictly construed by the courts" and "[s]uch provisions are not given effect unless the intent to provide indemnification for a party's own negligence is expressed in clear and unequivocal terms." *Bahamas*

---

[3]   Nowhere in the Agreement is it stated that Cintas is relieved of liability from its own negligent performance. However, this is not fatal to Cintas' position. Ohio courts have found contract provisions which indemnify for a party's own negligence to be enforceable where contractual language does not explicitly provide for it. *Glaspell et al. v. Ohio Edison Company*, 29 Ohio *St.3d 44, 47(1987)* ("There is also authority for the proposition that the word 'negligence' need not be utilized where an intention to exclude liability predicated upon such is set forth by words excluding liability "for any and all harms however caused.").

[4]   Here, Custom Seats does not argue that a public policy exception applies to render the Agreement unenforceable.

*Agricultural Industries Limited, and FM, Ltd. v. Riley Stoker Corporation*, 526 F.2d 1174 (6th Cir. 1975) (*citing George H. Dingledy Lumber Co. v. Erie R.R.*, 102 Ohio St. 236 (1921)); *Accord Freed v. Great Atl. & Pac. Tea Co.*, 401 F.2d 266 (6th Cir. 1968); *Kay v. Pennsylvania R.R.*, 156 Ohio St. 503 (1952). With respect to such indemnity provisions, the Supreme Court of Ohio has observed that:

> [i]t is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms. 14 R. C. L. 47. The liability of such indemnitee is regarded to be so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the liability unless the contract puts it beyond doubt by express stipulation. It cannot be established by inference, from words of general import.

*George H. Dingledy Lumber Co. et al.*, 102 Ohio St. 236, 242 (1921).

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted); *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 322 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law

and there is no issue of fact to be determined….However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.").

In determining whether contractual language is ambiguous, the contract must be "construed as a whole" in order "to give reasonable effect to every provision in the agreement." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir. 2008) (*quoting Tri–State Group, Inc. v. Ohio Edison Co.,* 151 Ohio App.3d 1 (2002) and *Stone v. Nat'l City Bank,* 106 Ohio App.3d 212 (1995)). Words "are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 245-46 (1978) (citations omitted). "Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Id.* (citations omitted). "An ambiguity must be apparent on the face of the contract, and extrinsic evidence is not permissible to 'create an ambiguity.'" *DN Reynoldsburg v. Show Shoe, Inc.*, No. 2:18-cv-1190, 2020 WL 5797828, at *3 (S.D. Ohio Sept. 29, 2020) (*quoting Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio App. 10th Dist. 2003)). "Where the terms in a contract are not ambiguous, courts

are constrained to apply the plain language of the contract." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir. 2008).

Where contractual language is ambiguous or unclear, extrinsic evidence is admissible to determine the intent of the parties. *Id*. Ambiguous contractual language is generally construed against the drafter of the contract. *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003); *Central Realty Co. v. Clutter*, 62 Ohio St.2d 411 (1980). This is particularly the case "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216 (2003).

With respect to indemnity agreements, contractual language is narrowly construed "[w]here the agreement protects an indemnitee from the financial consequences of his own negligence, and where there is no realistic opportunity to bargain afforded." *Brush Wellman Inc. v. Jeneric Pentron Inc.*, Nos. 1:03CV2305, 1:04CV721, 2008 WL 64704, at *4 (N.D. Ohio 2008) (*citing Glaspell v. Ohio Edison Co.,* 29 Ohio St.3d 44, 46-7 (1987)). However, narrow construction is not necessary "when such burden of indemnification was assented to in a context of free and understanding negotiation." *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 47 (1987) (citations omitted).

The court now examines whether the Agreement's language is ambiguous as to an intent to indemnify Cintas for its own negligence. Section 9 contains the Agreement's indemnification provision and provides, in full: [5]

> 9. Cintas not an insurer. Indemnification of Cintas by Customer. Customer agrees that neither Cintas nor subcontractors or assignees, including, without limitation, those providing monitoring services (collectively, "Subcontractors") are insurers and no insurance coverage is provided by this agreement. CUSTOMER ACKNOWLEDGES AND AGREES THAT CINTAS AND ITS SUBCONTRACTORS DO NOT ASSUME RESPONSIBILITY NOR SHALL THEY HAVE ANY LIABILITY FOR CLAIMS MADE AGAINST THEM CLAIMING THAT THEY ARE AN INSURER OF CUSTOMER'S SYSTEMS. THE FAILURE OF SUCH SYSTEMS TO OPERATE EFFECTIVELY, OR ANY OTHER TYPE OF INSURANCE COVERAGE AS AN INSURER. Customer acknowledges that during the term of this Agreement, it will maintain a policy of insurance covering public liability, bodily injury, sickness or death, losses for property damage, fire, water damages, and loss of property in amounts that are sufficient to cover all claims of Customer for any loses sustained. CUSTOMER AGREES TO INDEMNIFY AND HOLD CINTAS AND ITS SUBCONTRACTORS HARMLESS FROM AND AGAINST ALL COSTS, EXPENSES (INCLUDING ATTORNEY'S REASONABLY FEES) AND LIABILITY ARISING FROM CLAIMS REQUIRED TO BE COVERED BY INSURANCE PURSUANT TO THIS SECTION, INCLUDING ANY CLAIMS FOR DAMAGES ATTRIBUTABLE TO BODILY INJURY, SICKNESS OR DEATH, OR THE DESTRUCTION

---

[5] Pursuant to the Agreement, "Seller" is defined as Cintas or its subsidiaries and "Customer" is Custom Seats.

> OF ANY REAL OR PERSONAL PROPERTY. Cintas shall not be responsible for any claims of Customer against the Subcontractors, nor for any portion of any loss or damage that is required to be insured, is insured or insurable and shall be indemnified by Customer against all such claims including the claims of third parties.

(Doc. 64-8 at 3). Cintas contends that Section 9 unambiguously requires Custom Seats to insure, indemnify and hold Cintas harmless from the latter's own negligent performance. The court disagrees.

In its cross-motion for summary judgment, Custom Seats argues that Section 9 is ambiguous and should be construed as providing for only the indemnification of the fire protection system's function as designed. Specifically, Custom Seats suggests that the following sentence in Section 9 limits the indemnification provision to the fire protection system as designed: "CUSTOMER ACKNOWLEDGES AND AGREES THAT CINTAS AND ITS SUBCONTRACTORS DO NOT ASSUME RESPONSIBILITY NOR SHALL THEY HAVE ANY LIABILITY FOR CLAIMS MADE AGAINST THEM CLAIMING THAT THEY ARE AN INSURER OF CUSTOMER'S SYSTEMS."

The court finds Custom Seats' position persuasive. The word "systems" connotes a kind of mechanism. The court observes that the Agreement employs the phrase "systems or services", indicating that the meaning of the word "systems" does not subsume that of "services." (Doc.

64-8 at 4). Accordingly, the phrase "insurer of customer's systems" can be reasonably construed to mean insurer of the fire suppression systems, rather than insurer of the services supplied to install, or repair the systems.

From the sentence called out by Custom Seats, it is evident that the Agreement contemplates the indemnification of Cintas for claims against it alleging that it is an insurer of the fire protection system. It is, however, unclear as to the scope of the other kinds of claims contemplated. The next line in Section 9 states, "THE FAILURE OF SUCH SYSTEMS TO OPERATE EFFECTIVELY, OR ANY OTHER TYPE OF INSURANCE COVERAGE AS AN INSURER." This line clearly addresses claims relating to the failure of the fire protection system to operate effectively. However, the phrase "OR ANY OTHER TYPE OF INSURANCE COVERAGE AS AN INSURER" is open to two or more reasonable interpretations. Such phrase could be reasonably be interpreted to mean any other type of insurance coverage as an insurer of customer's systems, as limited by the preceding term, or any other type of insurance coverage as an insurer generally, without reference to the preceding term. *Compare George H. Dingledy Lumber Co. v. Erie R. Co.*, 102 Ohio St. 236, 245 (1921*)* (concluding that contractual language which stated that lessee "assumes all risk of loss, damage or injury, by fire or otherwise" was unclear as to what causes of damages were contemplated,

other than that by fire); *Direct Carpet Mills Outlet of Columbus, Inc. v. Amalgamated Realty Co.,* No. 87AP-101, 1988 WL 84405, at *8 (Ohio Ct. App. 10 Dist. Aug. 11, 1988) (finding that contractual release of liability language "accident of any kind" was limited by preceding terms "fire, explosion, wind").

Cintas maintains that subsequent language in Section 9 clearly reflects the parties' intent to indemnify Cintas for its own negligence, as the Agreement goes on to state that Custom Seats will maintain an insurance policy covering "any claims" "for any los[s]es" sustained and indemnify Cintas against "ALL COSTS, EXPENSES […] AND LIABILITY REQUIRED TO BE COVERED BY INSURANCE PURSUANT TO THIS SECTION." However, these phrases could arguably be limited in scope by the more specific, preceding language regarding Cintas' relief from reliability as an insurer of the systems, as set forth in the same paragraph. *Compare Bahamas Agricultural Industries Limited, and FM, Ltd. v. Riley Stoker Corporation*, 526 F.2d 1174 (6th Cir. 1975) (finding service provider was not relieved of liability for its own negligence because the relevant contract terms, which stated that "all responsibility for operation rests with the Purchaser" and the service provider "shall not be liable for any claims,

losses, labor, expenses or damages [...] of any nature arising from any cause," could arguably be limited in scope by preceding terminology).

Further, the Agreement's indemnification provision is ambiguous in another respect. Cintas' interpretation of Section 9, which provides for the indemnification of Cintas' own negligence, cannot reasonably co-exist with Section 10 of the Agreement without rendering a portion of Section 10 redundant or meaningless. Section 10 of the Agreement governs "Limitations of Liability of Cintas; Liquidated Damages" and states, in relevant part:

> […] Seller cannot predict the potential amount, extent, or severity of any damages or injuries to that Customer or others may incur which could be due to the failure of the system or services to work as intended. […] If Seller should be found liable for loss of damage due to a failure on the part of Seller or its systems or any fire suppression or alarm equipment, in any respect, its liability to Customer, its agents, officers, directors, employees or invitees shall be limited to $1,000.00 as liquidated damages. The provisions of this paragraph apply in the event of loss or damage, irrespective of cause or origin […] *or from negligence, active or otherwise, of Seller, its agents, or employees* […]

(Doc. 64-8 at 4) (emphasis added). The language of Section 10 contemplates liability for damages arising from Cintas' own negligence. However, this cannot be reasonably reconciled with Cintas' interpretation of

Section 9, which suggests that Cintas is relieved of liability for "any claims," including those arising from its own negligent performance.

Cintas further argues that any ambiguity in the Agreement should not be construed in Custom Seats' favor because the parties are both established businesses and Custom Seats had a fair opportunity to negotiate the terms of the Agreement prior to signing it. In response, Custom Seats argues that the Agreement amounted to a contract of adhesion, and that Custom Seats did not have a full and fair opportunity to negotiate its terms.

Because the Agreement does not clearly and unequivocally express the parties' intent to indemnify Cintas for its own negligence, the court deems it unnecessary to reach the issue of whether the parties had a fair opportunity to negotiate the terms of the Agreement.[6] While clauses limiting the liability of drafter need not be strictly construed against the drafter "when such burden of indemnification was assented to in a context of free and

---

[6]     While the court does not reach the issue of whether Custom Seats had a full and fair opportunity to negotiate the terms of the Agreement, we note that, in describing the parties' process in executing agreements, Dellamalva testified at deposition that "[a] lot of times these technicians and stuff come in the plant and they're just grabbing the first employee they see and just say, sign this." (Doc. 64-6 at 37:22-35). However, Custom Seats does not argue that the Agreement at issue was signed by someone other than an authorized employee. Dellamalva testified at deposition that he signed the first page of the Agreement but could not recall if the indemnity provision was attached to the version he signed. (Doc. 64-6 at 66:17-67:16; 65:7-16).

understanding negotiation," a strict construction of the Agreement is not needed to conclude that the Agreement's language is insufficient to relieve Cintas of liability for its own negligence. *Glaspell v. Ohio Edison Co.,* 29 Ohio St.3d 44, 44 (1987). This is because Ohio law provides that contracts of indemnity purporting to relieve one from the results of its own negligence "shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms." *George H. Dingledy Lumber Co. et al*., 102 Ohio St. 236, 242 (1921). Given that the court has determined that the Agreement's indemnity provision, when construed using the plain meaning of its terms, is ambiguous as to whether it provides for the indemnification of Cintas' own negligence, Cintas' interpretation of the indemnity provision cannot succeed as a matter of law.

Thus, the court will deny Cintas' motion for summary judgment and grant Custom Seats' cross-motion for summary judgment as to Count I of the amended third-party complaint.

### b. <u>Contractual Indemnification (Count II)</u>

In Count II of its amended third-party complaint, Cintas asserts against Custom Seats a contractual indemnification claim, wherein it alleges that Custom Seats breached the Agreement's indemnification provision by failing to indemnify Cintas against Midvale's negligence suit. (Doc. 74 at ¶¶35-40).

The court observes that Cintas' contractual indemnification claim relies upon the premise that the Agreement requires Custom Seats to indemnify Cintas for its own negligence.

Because the court has determined that, for the reasons previously discussed, the Agreement's language is insufficient to require Custom Seats to indemnify Cintas for its own negligence, Cintas lacks a basis for its contractual indemnification claim. Therefore, the court will deny Cintas' motion for summary judgment and grant Custom Seats' cross-motion for summary judgment as to Count II of the amended third-party complaint.[7]

### c. Declaratory Judgment (Count III)

Count III of Cintas' amended third-party complaint brings a claim for declaratory judgment. In seeking declaratory judgment, Cintas invokes the Declaratory Judgment Act, 28 U.S.C. §2201, (the "DJA") and the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A. §7533. (Doc. 74 at ¶¶41-46).

---

[7]   Cintas further requests reasonable attorneys' fees and costs it incurred in defending against Midvale's claims on the basis that the Agreement provides for the indemnification of Cintas in claims arising from Cintas' own negligence. (Doc. 65 at 16-17). Because the court finds that the Agreement's language is insufficient to require Custom Seats to indemnify Cintas for its own negligence, such a request will be denied.

At the outset, the court must determine whether the DJA or state declaratory judgment law governs Cintas' declaratory judgment claim. Federal courts apply federal procedural law even when applying state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965). It is well-established that the operation of the DJA is only "procedural", "leaving substantive rights unchanged." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (*quoting Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 509 (1959)). Thus, the DJA and not state declaratory judgment law, supplies the procedural law that governs Cintas' declaratory judgment claim. *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 281 n.4 (3d Cir. 2017) (concluding that the "DJA and not state declaratory judgment law supplies the procedural law that governs this case…notwithstanding the fact that the relief sought in the removed Declaratory Action was requested under the Pennsylvania Declaratory Judgments Act").

Under the DJA, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §2201(a) (emphasis added). "[D]istrict courts possess discretion in determining whether and when to

entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995) (*citing Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). "[A] district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." *DiAnoia's Eatery, LLC v. Motorists Mutual Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 27, 288 (1995)) ("Rather than being subject to the normal principle that federal courts should adjudicate claims within their jurisdiction, district courts exercising DJA discretion are governed by considerations of practicality and wise judicial administration.").

In the present case, Cintas seeks declaratory judgment:

> (a) enforcing the Contract, (b) directing Custom Seats, Inc. d/b/a Back Spin Seating to indemnify Cintas and hold Cintas harmless from all claims asserted by Midvale in this action and to reimburse Cintas for the amount paid in settlement of Midvale's claims and all attorney's fees and expenses Cintas incurred in defending against Midvale's claims, and (c) awarding such other relief as the Court deems appropriate

(Doc. 74 at ¶46). However, the same issues will be addressed in resolving Cintas' breach of contract claim. Because the court observes that

Cintas' requested order of declaratory judgment would not add anything further to this case, the court declines to entertain Cintas' declaratory judgment action. *Accord Hitachi Medical Systems America, Inc. v. Fairmont Diagnostic Center and Open MRI, Inc.*, No. 5:09CV00882, 2009 WL 10715074 (N.D. Ohio July 22, 2009) (declining to exercise Declaratory Judgment Act jurisdiction where plaintiff's request for declaration as to defendant's liability is addressed in plaintiff's claims for breach of contract and unjust enrichment.).

With respect to Cintas' declaratory judgment action, Custom Seats contends that summary judgment should be entered in its favor because Cintas has failed to join Custom Seats' insurance carrier, The Charter Oak Fire Insurance Company ("Charter Oak"), as a necessary party under Ohio's declaratory judgment statute, Ohio Revised Code 2721.02(A).

However, even if the court were to exercise jurisdiction over Cintas' declaratory judgment claim, Custom Seats' joinder argument would be ineffective because Custom Seats improperly relies upon Ohio law. As previously discussed, federal courts sitting in diversity apply federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965). Since the present question of whether declaratory judgment requires joinder is procedural rather than substantive, it is governed by

federal law. *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 229 (3d Cir. 2005) (finding that "the proposition that an injured claimant is an indispensable party in a suit to determine insurance coverage under Pennsylvania's Declaratory Judgment Act" reflects a "procedural and jurisdictional" issue). The DJA, unlike its Ohio counterpart, does not mention joinder of parties. Accordingly, neither the DJA nor Ohio's declaratory judgment statute serves as a proper basis for Custom Seats' joinder argument.

The court further observes that Custom Seats, in seeking dismissal of Cintas' declaratory judgment action for failure to join a necessary party, relies solely upon the Ohio declaratory judgment statute. In the absence of a proper motion for joinder before the court, the court does not find joinder necessary. Because the court declines to entertain Cintas' declaratory judgement action under the Declaratory Judgment Act and Custom Seats has failed to assert a proper motion for joinder, Custom Seats' joinder claim will be denied.

### d. **Cintas' Motion for Summary Judgment as to Custom Seats' Cross-Claims**

Cintas further argues that summary judgment should be granted in its favor as to Custom Seats' cross-claims. Custom Seats asserted cross-claims against Cintas in its answer to Cintas' original third-party complaint.

Namely, Custom Seats alleged that Midvale's losses were caused by the acts of Cintas alone and, insofar Midvale receives settlement related to the above-captioned action, Cintas is alone liable to Midvale "and/or jointly or severally liable" with Custom Seats "by way of indemnity, contractual defense and indemnity, and/or contribution." (Doc. 23 at ¶¶21-22). Cintas argues that summary judgment should be granted in its favor because Custom Seats' cross-claims are "unclear, vague, and fail[] to state a cognizable basis for relief against Cintas." (Doc. 65 at 15).

However, Custom Seats' answer filed in response to the original third-party complaint, and its cross-claim against Cintas contained therein, was made inoperative by the court's dismissal of Cintas' original third-party complaint for failure to adequately allege subject matter jurisdiction. (Docs. 72, 73). Accordingly, Custom Seats' cross-claims filed in reply to Cintas' original third-party complaint is directed at an inoperative pleading and rendered moot. *In re Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect"); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure §1476 (2d ed. 1990) ("A pleading that has been amended supersedes the pleading it

modifies…Once an amended pleading is interposed, the original pleading no longer performs any function in the case....").

While the parties have since stipulated to Custom Seats' denial of the allegations contained within the amended third-party complaint so that Custom Seats is not required to file an answer to the amended third-party complaint, the parties have not stipulated to the revival of Custom Seats' cross-claims as asserted in its answer to the original third-party complaint. Custom Seats, moreover, has not filed cross-claims to the amended third-party complaint.[8]

Thus, the court observes that Cintas' motion for summary judgment as to Cintas' cross-claims is moot and will be denied on such basis.

## V.   CONCLUSION

For the foregoing reasons, Cintas' motion for summary judgment as to all counts of its amended third-party complaint, (Doc. 64), is **DENIED**. Cintas' motion for summary judgment as to Custom Seats' cross-claims, (Doc. 64), is **DENIED as moot**.

---

[8] While Custom Seats "also moves the Court for Summary Judgment on Custom Seats' Cross-Claim against Cintas," it has also not addressed any cross-claim in its supporting brief. (Doc. 64).

Custom Seats' motion for summary judgment, (Doc. 66), is **GRANTED** as to Counts I and II of the amended third-party complaint and **DENIED** as to Count III of the amended third-party complaint. Insofar Custom Seats moves for summary judgment as to its cross-claims, such request is **DENIED as moot**.

An appropriate order follows.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 28, 2022**
20-22-03

- 30 -